Filed 12/21/20  P. v. Resendiz CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONACIANO C. RESENDIZ,<br><br>    Defendant and Appellant. | D076804<br><br><br>(Super. Ct. No. SCN375166) |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Peter James Musser for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Donaciano Resendiz, a legal permanent resident, entered into a plea bargain under which he pleaded guilty to possession of a controlled substance for sale (Health & Saf. Code, § 11378) and admitted a strike prior, in exchange for receiving a stipulated 32-month sentence and the prosecutor's agreement not to oppose placement in "fire camp."  After Resendiz completed

his sentence, he was transferred to immigration custody for deportation proceedings based on his conviction in this case. Resendiz then moved to vacate his conviction and withdraw his guilty plea under Penal Code section 1473.7, subdivision (a)(1),[1] which permits withdrawal of a guilty plea when the defendant establishes "prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea . . . ." After a thorough evidentiary hearing, the court denied the motion.

Resendiz raises three challenges on appeal. First, he contends his plea counsel failed to adequately advise him regarding the adverse immigration consequences of his guilty plea. However, both Resendiz and his plea counsel testified at the evidentiary hearing on this issue, and the trial court expressly found plea counsel more credible in his assertion that he had advised Resendiz he would be deported as a result of his guilty plea. Moreover, the court found that the judge who accepted Resendiz's guilty plea had expressly advised Resendiz he would be deported as a result.

Second, Resendiz contends his plea counsel failed to bargain for an immigration-neutral disposition. Although Resendiz presented testimony from an immigration attorney asserting immigration-neutral dispositions were available, Resendiz failed to meet his burden of introducing any evidence establishing the prosecution was likely to have agreed to any of those dispositions.

Finally, Resendiz contends the prosecutor who conducted the plea negotiations failed to fulfill his statutory obligation to "consider the avoidance of adverse immigration consequences in the plea negotiation process . . . ." (§ 1016.3, subd. (b).) However, the prosecutor opposing Resendiz's motion

---

[1] Further unspecified statutory references are to the Penal Code.

represented to the court that his colleague had, in fact, considered the adverse immigration consequences of the guilty plea. The current prosecutor further represented that his office reconsidered the issue in light of Resendiz's pending motion, yet still declined to accept an immigration-neutral disposition. The trial court accepted these representations.

Because all of Resendiz's challenges are without merit, we affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

One night in July 2017, Resendiz was driving on a road in Valley Center when he swerved his vehicle across the center line and nearly hit an oncoming tribal police patrol vehicle. The officers turned around and followed Resendiz into a dirt driveway, where they saw him get out of his vehicle and start running away. Resendiz's vehicle began rolling backward toward the patrol vehicle, causing the officers to reverse their vehicle. Resendiz ran back to his vehicle, jumped inside, and stopped it from continuing to roll. The officers detained Resendiz.

In plain view on the driver's seat of Resendiz's vehicle, the officers saw a plastic baggie containing a crystalline substance later determined to be methamphetamine. About 10 feet in front of the vehicle, the officers found another plastic baggie containing a similar amount of methamphetamine. And about 15 feet beyond the second baggie, the officers found a third plastic baggie containing a similar amount of methamphetamine. Crime lab analysis confirmed each plastic baggie contained approximately 14 grams of methamphetamine (totaling 42.95 grams), which a detective estimated had a street value of about $1,955.

Sheriff's deputies assisting in the investigation collected three cellphones from Resendiz, one of which contained text messages reflecting

3

drug sales. Deputies also collected two 9-millimeter bullets from Resendiz's pants pocket.

The San Diego County District Attorney charged Resendiz with one count of possession of a controlled substance ("to wit: methamphetamine") for sale (Health & Saf. Code, § 11378), and further alleged he had suffered a strike prior for a robbery.[2]

About eight months later, Resendiz entered into a plea bargain under which he agreed to plead guilty to possession of a controlled substance for sale and to admit a strike prior, in exchange for receiving a stipulated 32-month sentence and an agreement by the prosecutor not to oppose placement in fire camp.

The trial court accepted Resendiz's plea and sentenced him in accordance with the plea bargain.

After Resendiz completed his prison sentence, he was transferred to immigration custody for deportation proceedings based on his conviction in this case.

A few months later, Resendiz filed a motion in the trial court seeking to vacate his conviction and to withdraw his guilty plea on the basis his trial counsel did not properly advise him regarding the immigration consequences of his guilty plea. The prosecution opposed the motion. After conducting an evidentiary hearing, the trial court denied Resendiz's motion.

Resendiz appeals.

---

[2] According to the probation report, the robbery occurred in 2006 when Resendiz was 17. Resendiz and an accomplice confronted two pedestrians; Resendiz extended a knife toward the victims and demanded money from them; when one of the victims ran away, Resendiz pursued him and stabbed him in the back.

II.  DISCUSSION

Resendiz contends the trial court erred by denying his motion to vacate his conviction and withdraw his guilty plea because (1) his defense counsel failed to adequately advise him of the adverse immigration consequences of his guilty plea; (2) his defense counsel failed to bargain for an immigration-neutral disposition; and (3) the prosecutor failed to fulfill his statutory obligation to "consider the avoidance of adverse immigration consequences in the plea negotiation process . . . ."  (§ 1016.3, subd. (b).)

## A.  Background

### 1.  Guilty Plea and Sentencing

Resendiz's retained defense counsel (James Dicks) negotiated a plea bargain under which Resendiz agreed to plead guilty to possession of a controlled substance for sale (Health & Saf. Code, § 11378) and to admit a strike prior, in exchange for receiving a stipulated 32-month sentence and the prosecutor's agreement not to oppose placement in fire camp.  The factual basis for Resendiz's guilty plea states, "I knowingly and unlawfully possessed a controlled substance for sale.  I have a prior strike conviction."

On Resendiz's guilty plea form, under the heading "**CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST**," he initialed a box next to paragraph 7d., which states:  "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest *may result* in my . . . deportation . . . . Additionally, if this plea is to an 'Aggravated Felony' listed on the back of this form, then I **will** be deported . . . ."  (Italics added.)  In handwritten blue ink, the word "may" in the preprinted phrase "may result" was stricken and replaced with the word "will."

On the back of the form, under the heading "**AGGRAVATED FELONIES**," the following admonition appeared:

**"ANY CONVICTION OF A NON-CITIZEN FOR AN 'AGGRAVATED FELONY' AS DEFINED UNDER 8 U.S.C. 1101(a)(43), WILL RESULT IN . . . DEPORTATION . . . . [¶] 'AGGRAVATED FELONIES' include . . . [¶] . . . [¶] . . . POSSESSION FOR SALE OF ANY CONTROLLED SUBSTANCE."**

Resendiz checked a box on the form next to text stating, "I declare under penalty of perjury that I have read, understood, and initialed each item above and any attached addendum, and everything on the form and any attached addendum is true and correct." Immediately beneath this text, Resendiz signed and dated the form, and imprinted his right thumbprint.

In the paragraph just below Resendiz's certification, attorney Dicks signed and dated a paragraph stating:

> "I . . . personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea, *including any immigration consequences.* I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights." (Italics added.)

At the change of plea hearing, the trial court (Judge Michael Kirkman) questioned and advised Resendiz regarding the consequences of his plea:

> "Q. Is everything contained on this form true and correct?
>
> "A. Yes, your Honor.
>
> "Q. Have you had sufficient time with your counsel such [that] your questions have been answered to your satisfaction?
>
> "A. Yes, your Honor. [¶] . . . [¶]
>
> "Q. Do you believe under the circumstances that it's in your best interest to plead guilty here today?

6

"A.  Yes.  [¶] . . . [¶]

"Q.  And, sir, you understand that if you weren't a citizen this plea would result in the removal, deportation, exclusion [from] admission into the United States and denial of naturalization, and if that were an issue the Court would allow you time to continue the case before accepting a plea of guilty during which time you can talk with other counsel, understanding that as well and having discussed the matter further also with Mr. Dicks you wish to proceed with the plea in this case here today a plea of guilty; is all of that correct?

"A.  Yes, your Honor."

The trial court found that Resendiz "understands the nature of the charges and the consequences of entering a plea here today."  The court also confirmed with attorney Dicks that he joined in Resendiz's waiver of rights and entry of the plea.  The court then accepted Resendiz's guilty plea and admission of a strike prior.

Consistent with the plea bargain, the trial court sentenced Resendiz to 32 months in state prison and recommended he be placed in fire camp.

## 2.  Motion to Vacate Conviction

In May 2019, Resendiz was released from state custody, and transferred to immigration custody for deportation proceedings based on his conviction in this case.

In August 2019, Resendiz moved to vacate his conviction and withdraw his guilty plea on the basis he was never advised to consult with an immigration attorney and did not understand what was happening during the change of plea hearing.

In a supporting declaration, Resendiz stated he has been a lawful permanent resident since 2006, has three minor U.S. citizen children, and resides with them and their mother (Tatiana A.).

7

Resendiz explained in his declaration that shortly after his arrest on the drug charge, he retained attorney Dicks and met with him several times. They "maintained a good professional attorney/client relationship," and Dicks was very communicative. Dicks advised Resendiz "that because there was strong evidence against" him, he "should take an offered plea bargain of 32 months." Resendiz told Dicks "to see if he could [get] a better deal; but, that if there was not anything else he could do, to try to keep [Resendiz] out on bail" so he "could work and be with [his] family." Dicks later advised that 32 months was the best he could get, but that he would ask that Resendiz be placed in fire camp. Resendiz declared, "I do not recall any[thing] being discussed about my immigration status or what the immigration consequences of my plea would be."

Regarding the guilty plea form and change of plea hearing, Resendiz stated in his declaration that he did "not recall anything being discussed about [his] immigration status or what the immigration consequences of [his] plea would be." He further stated he did not understand the trial court's advisement about seeking a continuance to consult with immigration counsel.

The prosecution opposed the motion, arguing (among other things) the guilty plea form and the trial court's advisement sufficiently advised Resendiz that he *will*—not merely *may*—be deported as a result of his guilty plea.

### 3. Hearing

The trial court (Judge Harry Elias) held a thorough evidentiary hearing on Resendiz's motion. In accordance with Resendiz's burden of proof, attorney Dicks, Resendiz, Tatiana, and an immigration attorney (Kevin Tracy) testified on Resendiz's behalf. The prosecutor recalled Dicks as a rebuttal witness at the end of the hearing. After Dicks's initial testimony,

8

the trial court tentatively ruled it would grant Resendiz's motion. However, after hearing from the remaining witnesses, and from Dicks again, the court ultimately denied the motion.

***Attorney Dicks***

Dicks testified he discussed immigration with Resendiz "at some point," but could not recall whether it was the day he was retained. Dicks was "pretty sure" it was while Resendiz was "in court holding," though Dicks was not retained until after Resendiz had been released on bail. When asked if the discussion occurred before the change of plea hearing, Dicks responded, "Yes. Well, if it was, it wasn't much before." Dicks said it was his "policy" to discuss immigration during his first court appearance with a client, which the court pointed out was nearly seven months before the change of plea hearing.[3] But Dicks said he could not remember for certain when he had the discussion.

Regarding the substance of his advisement to Resendiz, Dicks said he "told him that . . . because of the strike prior and because of the elements of the offense that he was going to be deported on this case if he was convicted." Dicks also warned Resendiz that "if he had any hope of staying in the country he's got to talk to an immigration lawyer." This was consistent with Dicks's practice of determining a client's citizenship status, and "if they're anything less . . . than a citizen, . . . advis[ing] them that they are probably going to be deported and, on some cases, they will be deported and they should seek some help from an immigration lawyer." Dicks acknowledged he did not suggest the name of an immigration attorney to Resendiz because it was not his

---

[3]     The record supports the trial court's observation. Dicks first appeared in court with Resendiz in July 2017, about seven months before Resendiz's March 2018 guilty plea.

9

policy at that time to do so.  Nor did Dicks, himself, ever consult an immigration attorney in this case because he "knew . . . or . . . felt [Resendiz] was going to be deported."

As to plea negotiations, Dicks testified he "tried to get [Resendiz] the best deal possible," but he could not say he looked for an immigration-neutral "safe haven."  The "closest thing [he] got to a safe haven was trying to leave the particular type of drug off the change of plea form when . . . filling out the factual basis."  Dicks acknowledged the prosecutor who handled the plea negotiations (different than the prosecutor opposing Resendiz's motion) was "a pretty reasonable prosecutor sometimes," but Dicks never sought his advice or met and conferred regarding "an alternate plea."  Based on the evidence against Resendiz, which Dicks characterized as "pretty brutal," "there was just no way" the prosecutor would have accepted a plea for simple possession—"It was going to be a possession for sale one way or the other." Dicks admitted he neither asked the prosecutor to strike "methamphetamine" from the complaint (he merely "le[ft] it off the factual basis" in the change of plea form), nor sought to "plead up" to the more severe offense of transportation of a controlled substance for sale (Health & Saf. Code, § 11379).

Regarding the guilty plea form, Dicks testified that when he went over the back of the form (setting forth deportable aggravated felonies) with Resendiz, Dicks "told him he was going to be deported."  Dicks reiterated that although he was negotiating for placement in fire camp, he told Resendiz "[y]ou're probably not going to get it because you're going to get deported." Dicks said the handwritten change on the form from "may result" to "will result" was not his handwriting, and he "assume[d] it was Judge Kirkman's or whoever took the plea."

10

Dicks testified he did not recall how long it took him to fill out the form with Resendiz, or how long after they filled it out the court took Resendiz's plea. Resendiz's current counsel asked Dicks hypothetically, "If he signed the change of plea form that day and then, let's say, half an hour later was before Judge Kirkman, would you think that that was adequate time to contemplate the adverse immigration" consequences? Dicks responded, "No, I don't think that's enough time." However, Dicks testified he "felt [Resendiz] at that time had enough time," and Dicks would not have gone forward with the plea if he "had some doubts as to whether [Resendiz] understood it."

### *Tentative Ruling*

After Dicks's initial testimony, the trial court stated, "I'm at a stage now I'll grant [Resendiz's motion] and bring him back and the deal's all off."

Resendiz's counsel asked the prosecutor in open court if he would agree to strike "methamphetamine" from the complaint as part of a new plea bargain. The prosecutor said no. When the court asked the prosecutor why not, he explained, "When the motion was filed I actually had it already reviewed by my office. We evaluated everything that [Resendiz's counsel] submitted to our office." The prosecutor vouched that his office took immigration consequences into account when making this decision. When the court asked for further explanation, the prosecutor elaborated:

> "[T]his issue has been run up the chain. And so for the purposes of consideration, we have looked over all of [the] material [Resendiz's counsel] supplied to us including his children, his own status, his criminal record. Based off of all of that information, our office did decide to oppose this motion and not to offer any change in regards to the type of plea that was entered."

Defense counsel argued this did not satisfy the prosecution's burden to consider adverse immigration consequences.

11

The trial court inferred from the prosecutor's response that his office considered deportation appropriate. Although the court found it "pretty clearly borne out by the record" that "Judge Kirkman advised [Resendiz] and advised him correctly" that "[h]e will be deported," the court stated it had "heard enough from Mr. Dicks to find there's some equivocation as to how [Resendiz] was advised." Accordingly, the court again stated it would grant the motion.

After hearing further argument from the prosecutor about the extent to which Resendiz understood the court's and Dicks's immigration advisements, the trial court agreed to hear additional evidence.

### Resendiz

Resendiz testified telephonically from immigration custody without the aid of an interpreter. He stated he has three children who are United States citizens and for whom he was the sole provider prior to his incarceration. He lived with them and their mother, Tatiana. All of Resendiz's immediate family lived legally in the United States, and he had no connections in Mexico.

Resendiz testified he was free on bail the entire time Dicks represented him, and their first meeting was in Dicks's office (not the court holding cell). They met five or six times, and Tatiana attended all their meetings. Resendiz maintained Dicks "never asked" and "never advised" him about his "immigration status"—"the word . . . 'immigration' never came up." Resendiz said he never consulted with an immigration attorney because he was never advised to.

When asked if he would "have agreed to spend more time in state prison if [he] knew that [he] could at least try to save [his] green card," Resendiz replied, "Yes, of course."

12

Regarding the change of plea hearing, Resendiz claimed that even though he felt he needed more time and was confused, he never expressed this to the court because Dicks had already told him there was nothing more they could do.  Moreover, when Judge Kirkman asked about the change of plea, Resendiz looked at Dicks, who nodded back, so Resendiz "agreed to the deal."

On cross-examination, Resendiz contradicted Dicks's testimony by claiming Dicks had not read the guilty plea form to him, but merely told Resendiz where to initial and sign.  Resendiz said he did not remember reading the paragraph that stated he had read and understood everything in the form.  He acknowledged he heard Judge Kirkman warn that he "will be deported," but he did not speak up or try to "pause[ ] the proceedings" because he trusted Dicks, who had already advised there was nothing else they could do.

The prosecutor concluded his cross by asking, "So you're saying between your first meeting with Mr. Dicks all the way up to the point where the judge said you would be deported, you and Mr. Dicks never discussed immigration whatsoever?"  Resendiz answered, "We never did."

### Tatiana

Tatiana testified she accompanied Resendiz to about five meetings with Dicks.  During those meetings, they went over the case and possible plea deals, but "didn't really talk about any immigration issues."  Dicks never "instructed [them] to go see an immigration attorney."

Tatiana acknowledged she was not present when Resendiz and Dicks went over the guilty plea form, or when Judge Kirkman mentioned deportation.

13

*Tracy*

Kevin Tracy testified he had been an immigration attorney for 33 years. He explained that aggravated felonies, including possession of methamphetamine for sale (Health & Saf. Code, § 11378), are mandatory deportation offenses. Tracy identified several strategies to avoid deportation when a client is charged with an aggravated felony: (1) plead "to something lesser"; (2) negotiate with the prosecutor to omit the name of the controlled substance from *the complaint* because not all controlled substances regulated under California law are regulated under federal law (though methamphetamine is), and thus the ambiguity created by a silent record of conviction may prevent deportation; and (3) negotiate with the prosecutor to "plead up" to a violation of Health and Safety Code section 11379, which covers several illicit activities, not all of which are mandatory deportation offenses.

*Dicks*

The prosecutor recalled Dicks, who testified that Resendiz's and Tatiana's testimonies that he "never discussed immigration with Mr. Resendiz" were incorrect. Dicks testified that although he did not "remember the exact words," it is his "policy if you are not a citizen in this type of offense" to disclose that "if you're convicted, . . . [y]ou're going to get deported."

Dicks did not remember filling out the guilty plea form, but he "remember[ed] going it over with [Resendiz], giving it to him, initialing it, giving it to the prosecutor, initialing it and going over it with Judge Kirkman." Dicks insisted he "read every single line to" Resendiz, including "the line in regards to the immigration consequences." Resendiz had no questions about it; if he had, Dicks would have answered them.

14

Dicks maintained Resendiz did not "say or even do anything" at the change of plea hearing "that would suggest to [Dicks] to call time out . . . ."

Dicks explained that although he has consulted with immigration attorneys before, he did not do so in this case because—based in part on his prior consultations—he "was convinced [Resendiz] was going to be deported," and he told him so.

***Argument and Ruling***

Resendiz's counsel argued that even if Dicks had advised Resendiz he would, in fact, be deported if convicted, Dicks nevertheless misadvised Resendiz by failing to refer him to an immigration attorney or to advise of the possibility of omitting methamphetamine from the complaint or of pleading up to an offense that is not necessarily deportable. Counsel implored the court, "Why wasn't that tried at least?"

The court responded that the current prosecutor "told me as an officer of the court they won't do it. They won't do it. So what is Mr. Dicks supposed to do different? So let's say he asked. They say they won't do it." Defense counsel responded he would be satisfied if Dicks had asked, but it was "prejudicial error" not to have done so.

The prosecutor argued Resendiz had not established error or prejudice. As to error, the prosecutor argued Resendiz's testimony was not credible, and Dicks obtained "pretty much the lowest deal you could get . . . ." The court interjected, "He was offered the lowest deal, but the People had an opportunity to make it immigration neutral, did they not?" When the prosecutor responded that "[w]e were never asked to do so," the court admonished that "[t]he People have an affirmative duty to do so." The prosecutor countered that the affirmative duty is merely *to consider* an

15

immigration-neutral disposition.  The court then explored with the current prosecutor whether the prior prosecutor had done so:

> "THE COURT:  And are you aware and do you believe that your colleague was aware that [Health and Safety Code section] 11378 is a mandatory deportable offense?
>
> "[PROSECUTOR]:  Yes, your Honor.
>
> "THE COURT:  And so you were aware of that and knew there was something you could do, still keeping that crime, still keeping that sentence, that would have made it immigration neutral; is that correct?  [¶] . . . [¶]
>
> "[PROSECUTOR]:  Yes, your Honor.  So yes, I would agree that that is a fair statement and correct statement of what we were aware of at that time.  However, we did not agree to take anything other than what was offered on the table, which is why [Resendiz] pled guilty."

Turning to prejudice, the prosecutor argued Resendiz could not show he would not have taken the plea bargain if he had been advised it would result in his being deported, because he was, in fact, so advised.

The trial court denied Resendiz's motion, explaining:

> "Between [Resendiz and Dicks], I find Mr. Dicks more credible.  [¶] . . . [¶]  I believe that the defendant was in fact advised as to immigration consequences.  I do not believe as it relates to the consequence of what the plea would be to this he was misadvised.  Could he have been advised to do more, like check with an immigration lawyer?  Sure, the answer to that question is yes.  I don't believe that's required.
>
> "Could Mr. Dicks have asked for some other additional change to the complaint, to the charge?  Yeah, I imagine he could.  I believe Mr. Dicks believed he was trying to do as best he could for his client when he made sure the words were stricken from the change of plea form, but I don't think he ever misadvised Mr. Resendiz.
>
> "And the final issue it comes down to, respective credibility . . . ."

16

## B. Legal Principles

The Legislature has declared its intent to "promote fairness" in criminal proceedings involving individuals who are not U.S. citizens by ensuring they are adequately advised of the immigration consequences of guilty or nolo contendere pleas. (§ 1016.5, subd. (d).) Consequently, defense counsel must "provide accurate and affirmative advice about the immigration consequences of a proposed disposition, and when consistent with the goals of and with the informed consent of the defendant, and consistent with professional standards, defend against those consequences." (§ 1016.3, subd. (a).) Likewise, prosecutors must "consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." (§ 1016.3, subd. (b).)

Similarly, trial courts must independently advise noncitizen defendants that a guilty or nolo contendere plea may or will have adverse immigration consequences. (§ 1016.5, subd. (a).)[4] Although trial courts are required by statute to advise only that a conviction "*may* have the consequences of deportation" (*ibid.*, italics added), the courts have clarified that when deportation is virtually certain the defendant must be so advised (see, e.g., *People v. Patterson* (2017) 2 Cal.5th 885, 895-896). "Upon request," a trial court must "allow the defendant additional time to consider the appropriateness of the plea in light of the advisement . . . ." (§ 1016.5, subd. (b).)

---

4    Section 1016.5, subdivision (a) requires that trial courts give noncitizen defendants the following advisement: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Section 1473.7 provides noncitizen defendants a mechanism by which to challenge convictions they contend resulted from inadequate advice or consideration of adverse immigration consequences. This statute provides that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).)

If the defendant establishes prejudicial error under this provision by a preponderance of the evidence, the court "shall" grant the motion to vacate the conviction or sentence. (§ 1473.7, subd. (e)(1).) The defendant shows prejudice if he can convince the court "he would never have entered the plea if he had known that it would render him deportable." (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1011-1012.)

The parties agree the independent review standard applies. Under this standard, "[w]e accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76 (*Ogunmowo*); see *People v. Vivar* (2019) 43 Cal.App.5th 216, 224, review granted (Mar. 25, 2020, No. S260270).)

## C. Analysis

### 1. Resendiz Was Advised and Understood He *Would Be* Deported

Resendiz contends the trial court erred by finding he was advised and understood he *would* be—as opposed to *may* be—deported as a result of his

guilty plea. Although Resendiz frames this challenge as a claim the trial court abused its discretion, it is really a disguised challenge to the sufficiency of the evidence supporting the trial court's factual findings. Properly framed, the challenge fails. (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76 ["[w]e accord deference to the trial court's factual determinations if supported by substantial evidence"].)

During his initial testimony, Dicks stated it was his policy to discuss immigration status with his clients during their first meeting, which occurred about seven months before the plea hearing. Dicks also testified that at some point *before the plea hearing*, though "it wasn't much before," he expressly told Resendiz he would be deported because of his strike prior and the nature of the present offense. Dicks further advised Resendiz during their meetings to consult with an immigration attorney if he wanted "any hope of staying in the country."

Dicks testified he also advised Resendiz while they were reviewing the change of plea form that he *would* be deported as a result of the plea. One preprinted part of paragraph 7d of the form was modified in pen to advise Resendiz that he *will*—not merely *may*—be deported. Dicks assumed the handwritten change was made by Judge Kirkman. The trial court could reasonably infer this was the case, and that Judge Kirkman modified the form before Resendiz initialed and signed it (i.e., that the judge did not alter the document after Resendiz signed it).

Another preprinted part of paragraph 7d advised that if the conviction is for an aggravated felony listed on the back of the form, Resendiz "**will** be deported." Dicks testified he advised Resendiz while they were reviewing these provisions that he would be deported.

19

Dicks's testimony constitutes substantial evidence in support of the trial court's finding that Dicks did, in fact, advise Resendiz of the adverse immigration consequence of his guilty plea.

In addition to Dicks's testimony, Judge Kirkman expressly advised Resendiz during the change of plea hearing that if he is not a citizen, "this plea *would* result in [his] . . . deportation." (Italics added.) Resendiz acknowledges in a footnote in his opening brief that even if he had "not been advised [by Dicks] prior to the plea, but had been advised by the Court that the plea *would* result in removal (deportation), such plea would probably have been a sufficient admonishment . . . to withstand a motion to withdraw the plea." We agree.

The record also contains substantial evidence establishing that Resendiz understood the immigration consequences of his guilty plea. Resendiz initialed a box on the plea form indicating he understood he would be deported (paragraph 7d), and signed the form under penalty of perjury declaring he read and understood everything in the form and its attachments. Dicks testified on behalf of the prosecution that—contrary to Resendiz's testimony—he (Dicks) "read every single line" of the form to Resendiz, including "the line in regards to the immigration consequences." The trial court expressly found Dicks more credible than Resendiz.

Dicks also testified Resendiz did not say or do anything during the change of plea hearing to suggest he needed more time to consider the plea. And when the trial court asked Resendiz if he "underst[ood]" he would be deported if he was not a citizen, Resendiz responded, "Yes, your Honor."

Substantial evidence thus supports that Resendiz understood he would be deported as a result of his guilty plea.

Resendiz argues the trial court's ruling is undermined by Dicks's testimony "that reading and signing a plea form one-half hour prior to entering a guilty plea before the court would 'not be enough time' to contemplate immigration consequences." But this testimony came in response to a hypothetical question about whether one-half hour would be enough time—Dicks did not testify that Resendiz had only one-half hour. To the contrary, Dicks testified he believed Resendiz "had enough time," and Dicks would not have gone forward with the plea if he "had some doubts as to whether [Resendiz] understood it."

Resendiz also argues there was nothing about Dicks's rebuttal testimony that justified the trial court's departure from its tentative ruling to grant Resendiz's motion. This argument fails for two reasons. First, "a trial court's tentative ruling is not binding on the court," and the "court may change its ruling until such time as the ruling is reduced to writing and becomes the [final] order of the court." (*Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300.) Second, by the time Dicks retook the witness stand, Resendiz had testified categorically that Dicks never even mentioned the word "immigration" in any of their five or six meetings. This distilled the issue as a battle of credibility between Resendiz and Dicks, which the trial court resolved against Resendiz. Thus, although the trial court needed no justification to depart from its tentative ruling, the context provided by Resendiz's and Dicks's diametrically conflicting testimonies provided sufficient justification.

Substantial evidence thus supports the trial court's factual findings that Resendiz was advised and understood prior to his guilty plea that the plea *would* result in his deportation.

## 2. Failure to Pursue Immigration-Neutral Dispositions

Resendiz contends the trial court also erred by denying his motion because attorney Dicks failed to bargain for immigration-neutral dispositions such as striking "methamphetamine" from the complaint or "pleading up" to transportation of a controlled substance for sale (Health & Saf. Code, § 11379).  Assuming without deciding that these alternative dispositions were truly immigration-neutral, and that it was error for Dicks not to pursue them, Resendiz's contention fails because he has not shown the error caused him prejudice.

A defense counsel's failure to pursue an immigration-neutral alternative disposition in a plea bargain *can* constitute a ground for relief under section 1437.7 *if* the defendant establishes the failure resulted in prejudice.  (See *People v. Bautista* (2004) 115 Cal.App.4th 229, 238 (*Bautista*).)  To establish prejudice, the defendant must adduce some *evidence* establishing the prosecutor would likely have agreed to the immigration-neutral disposition.  (See *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1136 [defendant's "claim that his trial attorney erred by failing to investigate an immigration neutral disposition [was] not supported by substantial evidence" where the defendant "did not offer any evidence from the prosecutor, his public defender, or an immigration expert on this point"]; *People v. Tapia* (2018) 26 Cal.App.5th 942, 953-954 [defendant's "pure speculation without support in the record" that an " 'immigration safe' plea bargain . . . could have been negotiated" . . . " ' "is not evidence, less still substantial evidence" ' "]; *People v. Perez* (2018) 19 Cal.App.5th 818, 830 ["There is no indication in the record that the prosecution was willing to agree to an immigration safe disposition."]; *In re Resendiz* (2001) 25 Cal.4th 230, 253-254 [petitioner failed to meet his burden of establishing prejudice where he failed to "adduce[] any

substantial evidence suggesting the prosecutor might ultimately have agreed to a plea that would have allowed petitioner to avoid adverse immigration consequences"].)

Resendiz's reliance on *Bautista*, *supra*, 115 Cal.App.4th 229 to support his claim of prejudicial error is misplaced. The defendant in *Bautista* supported his motion with a declaration from an immigration attorney establishing both that (1) various immigration-neutral dispositions were possible; and (2) the prosecutor would likely have agreed to such a disposition because the expert had previously participated in five cases in which a similar outcome had been achieved. (*Id.* at pp. 238-240.)

Here, while Resendiz supported his motion with testimony from an immigration attorney (Tracy) asserting that various immigration-neutral dispositions were possible (e.g., striking "methamphetamine" from the complaint, or pleading up to transportation of a controlled substance for sale), neither Tracy's testimony nor any other evidence established that the prosecutor would likely have agreed to such a disposition here.[5] Specifically, unlike the expert in *Bautista* who testified to a successful track record with this strategy in the relevant jurisdiction (*Bautista*, *supra*, 115 Cal.App.4th at pp. 238-240), Tracy did not establish he had ever *successfully* employed this strategy *anywhere*.

And while Dicks testified generally that the prosecutor was "pretty reasonable . . . sometimes," this was insufficient to establish the prosecutor would have agreed to an immigration-neutral disposition here.

Consequently, Resendiz has not shown prejudicial error.

---

5    Indeed, as we discuss in the following section, the record suggests the prosecutor was *unlikely* to do so here.

23

### 3. Prosecutor's Consideration of Consequences

Finally, Resendiz contends the trial court erred because the prosecutor who negotiated the plea bargain failed to comply with his statutory obligation to "consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." (§ 1016.3, subd. (b).)[6] Resendiz has not met his burden to show error or prejudice.

As to error, we start with the presumption that the prosecutor performed his official duties. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."]; see *People v. Superior Court of Contra Costa County* (1935) 4 Cal.2d 136, 147 ["The district attorney who participated in the proceeding, now deceased, is presumed to have had knowledge of the law and to have acted in compliance with its requirements."]; *People v. Henderson* (1953) 121 Cal.App.2d 298, 299 ["the 'official duty' of the prosecutor is presumed to have been 'regularly performed' "].) The fact, as Resendiz points out, that attorney Dicks never proposed an immigration-neutral disposition to the prosecutor does not overcome the presumption that the prosecutor independently complied with his statutory duty.

---

6    Section 1016.3, subdivision (b) states in full: "The prosecution, in the interests of justice, and in furtherance of the findings and declarations of Section 1016.2, shall consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." Section 1016.2, in turn, codifies federal and state case law recognizing that "the consideration of immigration consequences by both parties in the plea negotiating process . . . can only benefit both the State and noncitizen defendants during the plea-bargaining process" because by "bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties." (§ 1016.2, subd. (b).)

Beyond the presumption, the record supports a finding that the prosecutor who handled the plea negotiations (James Teh) was aware of and considered the immigration consequences of the guilty plea. The prosecutor who opposed Resendiz's motion (Vincent Chen) represented to the court that Teh was aware during the plea negotiations that possession of methamphetamine for sale was a mandatory deportable offense, that "there was something [he] could do . . . that would have made it immigration neutral," yet he "did not agree to take anything other than what was offered on the table." The fact Teh ultimately did not *agree* to an immigration-neutral disposition does not mean he did not at least *consider* one.

Even if the record did not support the finding that prosecutor Teh considered immigration consequences during the plea negotiation process, Resendiz has not shown that this failure prejudiced him. When the trial court tentatively granted Resendiz's motion, prosecutor Chen rejected Resendiz's request to strike "methamphetamine" from the complaint as part of a new plea bargain. Chen explained that when Resendiz filed the instant motion, it was "run up the chain" and Chen and his office considered Resendiz's family situation, criminal history, and immigration status, yet "decide[d] to oppose [the] motion and not to offer any change in regards to the type of plea that was entered." Resendiz does not explain why the prosecution would have reached a different conclusion if it had first considered the issue during the plea negotiation process rather than in response to his motion. Without such an explanation, Resendiz has not shown that any theoretical error prejudiced him.

### 4. Conclusion

We recognize Resendiz's guilty plea had dire immigration consequences for him. But, after conducting a thorough evidentiary hearing, the court

found Resendiz had been sufficiently advised of, and understood, those consequences, and substantial evidence supports these findings.  The court also concluded the prosecution complied with its statutory obligation to consider an immigration-neutral disposition, which the prosecution declined to accept in light of Resendiz's strike prior (a robbery in which he stabbed a victim in the back) and the circumstances of the present offense (possession of methamphetamine packaged for sale, cellphone evidence indicating sales activity, and possession of ammunition when arrested).

## III.  DISPOSITION

The order is affirmed.

HALLER, Acting P. J.

WE CONCUR:


BENKE, J.


GUERRERO, J.

26